*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TAWANDA HARRIS,

      Plaintiff-Appellant,

v

ALLSTATE FIRE AND CASUALTY INSURANCE
COMPANY, also known as ALLSTATE
INSURANCE COMPANY,

      Defendant,

and

ARNOLD ALSON,

      Defendant-Appellee.

UNPUBLISHED
May 18, 2023

No. 359588
Wayne Circuit Court
LC No. 19-014303-NI

Before: GLEICHER, C.J., and HOOD and MALDONADO, JJ.

PER CURIAM.

Plaintiff, Tawanda Harris, appeals as of right the circuit court's order granting summary disposition in favor of defendant, Arnold Alson (hereinafter "defendant"), pursuant to MCR 2.116 (C)(10) (no genuine issue of material fact),[1] concluding that plaintiff did not sustain a serious

---

[1] Defendant's motion and the trial court's order each cited both MCR 2.116(C)(10) and MCR 2.116(C)(8) (failure to state a claim) as bases for summary disposition. However, both the motion and order were based entirely on the evidence and absence of evidence. A motion for summary disposition under MCR 2.116(C)(8) tests a complaint's legal sufficiency, and such a motion must be decided based only on the pleadings, not any record evidence. *Jeffrey-Moise v Williamsburg Towne Houses Coop, Inc*, 336 Mich App 616, 623; 971 NW2d 716 (2021). Moreover, defendant's motion provided only cursory citations to MCR 2.116(C)(8). Therefore, we have proceeded with our analysis by applying only MCR 2.116(C)(10) and the rules governing its application.

impairment of an important body function pursuant to MCL 500.3135.[2]  We conclude that the evidence offered in this case presents a factual dispute concerning the nature and extent of plaintiff's injuries, and the dispute is material to a determination of whether she has suffered a serious impairment.  Therefore, we reverse the trial court's order and remand for additional proceedings.

## I.  BACKGROUND

This case arises from a February 10, 2019 motor vehicle accident.  Plaintiff was traveling through an intersection when defendant did not stop for a red light and hit the driver's side of her vehicle.  Plaintiff reported that her left shoulder hit the door of her car.  At the scene, she complained of shoulder and neck pain, and was transported to a hospital.  An x-ray of plaintiff's left shoulder and a CT scan of her cervical spine showed no acute abnormalities.  Three days after the accident, plaintiff followed up with her primary care physician and complained of neck and shoulder pain on her left side.  Her physician noted that she "exhibits tenderness" in her left neck area and left shoulder, but had a "normal range of motion." Plaintiff was cleared to return to work after missing eight days due to the accident.  When plaintiff's pain persisted, her primary care physician referred her to a physical medicine and rehabilitation specialist.

On March 28, 2019, plaintiff presented to Advance Rehabilitation Clinic for physical therapy evaluation and treatment, where Dr. Michael Daneshvar evaluated her and determined that she had a "flattening of cervical lordotic curve," decreased range of motion "at her cervical [spine] secondary to pain and muscle stiffness," and an elevated left shoulder "as a result of muscle spasm at upper trapezius muscle."  Plaintiff saw Dr. Hussein Huraibi a week later who diagnosed a sprain of cervical spine ligaments and traumatic spondylopathy in cervical region, and referred her to a physical therapist. Dr.  Huraibi disabled plaintiff from housework from April 3, 2019 until May 15, 2019.

Plaintiff attended physical therapy two to three times a week from March 28, 2019, until June 21, 2019, but her pain persisted.  In July 2019, she sought chiropractic care and underwent a course of treatment that involved spinal adjustments, extra-spinal manipulations, therapeutic exercise, manual trigger point therapy, traction, massage therapy, and hot packs.

Altogether, plaintiff missed eight days of work after the accident because her pain prevented her from doing physical tasks required of her. The pain also impeded her ability to engage in her recreational activities including bowling, playing softball, and walking for long periods of time.

Plaintiff brought this third-party no-fault action against defendant, alleging that defendant's negligence caused her to suffer injuries to her left shoulder, right leg, back, left arm, and neck, as well as aggravating preexisting conditions.  Defendant moved for summary disposition pursuant to MCR 2.116(C)(10), arguing: (1) plaintiff failed to demonstrate an objectively manifested impairment of an important body function, and (2) plaintiff did not

_____

[2] This appeal does not involve any of plaintiff's claims against Allstate Fire and Casualty Insurance Company, which were dismissed based on a stipulation of the parties.

demonstrate her injuries affected her general ability to lead a normal life. The trial court granted summary disposition, concluding "plaintiff failed to present any evidence of an objective manifestation." Plaintiff moved for reconsideration, which the trial court denied. This appeal followed.

## II. STANDARDS OF REVIEW

We "review de novo a trial court's decision to grant or deny summary disposition." *Broz v Plante & Moran, PLLC*, 331 Mich App 39, 45; 951 NW2d 64 (2020).

Motions for summary disposition brought pursuant to MCR 2.116(C)(10) test the factual sufficiency of a claim. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). "The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). "In deciding whether to grant a motion for summary disposition pursuant to MCR 2.116(C)(10), a court must consider the affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties' in the light most favorable to the nonmoving party." *Bonner v City of Brighton*, 495 Mich 209, 220-221; 848 NW2d 380 (2014) (quotation marks, citations, and alteration omitted). The moving party bears the initial burden of production, which may be satisfied "in one of two ways." *Quinto v Cross & Peters Co*, 451 Mich 358, 361; 547 NW2d 314 (1996). "First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*. at 362 (quotation marks and citation omitted). Once the moving party satisfies its burden in one of those two ways, "[t]he burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists." *Id*. A genuine issue of material fact exists "when reasonable minds can differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgmt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

We also "review de novo the interpretation and application of a statute as a question of law. If the language of a statute is clear, no further analysis is necessary or allowed." *Eggleston v Bio-Medical Applications of Detroit, Inc.*, 468 Mich 29, 32; 658 NW2d 139 (2003).

## III. ANALYSIS

Plaintiff argues that the trial court erred by granting summary disposition because she demonstrated a threshold injury under MCL 500.3135. We agree.

Pursuant to MCL 500.3135(1): "A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." Interpreting the version of MCL 500.3135 in effect until June 11, 2019, our Supreme Court explained there are three necessary prongs to establish a "serious impairment of body function":

(1) an objectively manifested impairment (observable or perceivable from actual symptoms or conditions) (2) of an important body function (a body function of value, significance, or consequence to the injured person) that (3) affects the person's general ability to lead his or her normal life (influences some of the plaintiff's capacity to live in his or her normal manner of living). [*McCormick v Carrier*, 487 Mich 180, 215; 795 NW2d 517 (2010).]

The Legislature adopted *McCormick*'s framework by enacting subsection (5), which now defines "serious impairment of body function" as follows:

As used in this section, "serious impairment of body function" means an impairment that satisfies all of the following requirements:

(a) It is objectively manifested, meaning it is observable or perceivable from actual symptoms or conditions by someone other than the injured person.

(b) It is an impairment of an important body function, which is a body function of great value, significance, or consequence to the injured person.

(c) It affects the injured person's general ability to lead his or her normal life, meaning it has had an influence on some of the person's capacity to live in his or her normal manner of living. Although temporal considerations may be relevant, there is no temporal requirement for how long an impairment must last. This examination is inherently fact and circumstance specific to each injured person, must be conducted on a case-by-case basis, and requires comparison of the injured person's life before and after the incident.

Turning to the first prong, the *McCormick* Court held an objectively manifested impairment "is an impairment that is evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function. In other words, an 'objectively manifested' impairment is commonly understood as one observable or perceivable from actual symptoms or conditions." *Id*. at 196. The existence of pain and suffering, standing alone, does not satisfy the serious impairment threshold; instead, "plaintiffs must introduce evidence establishing that there is a physical basis for their subjective complaints of pain and suffering," and this showing "generally requires medical testimony." *Id*. at 197-198 (quotation marks and citation omitted). Relatedly, "when considering an impairment, the focus is not on the injuries themselves, but how the injuries affected a particular body function." *Id*. at 197 (quotation marks and citation omitted).

Record evidence supports that plaintiff sustained objectively manifested impairments to her back, neck, and shoulder caused by the accident. Defendant argues plaintiff failed to present medical testimony or documentation evidencing a physical basis for her subjective complaints of impairment as a result of the accident. However, Dr. Huraibi's records show that he detected "traumatic spondylopathy" in plaintiff's cervical region, and Dr. Daneshvar indicated that plaintiff had a flattening of her cervical lordotic curve, decreased range of motion, and an elevated left shoulder as a result of muscle spasm. Therefore, plaintiff presented evidence of objectively manifested impairments.

While plaintiff's medical records do not explicitly state these impairments were a result of the accident, it is reasonably inferable that they were. This Court has stated:

> Although causation cannot be established by mere speculation, a plaintiff's evidence of causation is sufficient at the summary disposition stage to create a question of fact for the jury if it establishes a logical sequence of cause and effect, notwithstanding the existence of other plausible theories, although other plausible theories may also have evidentiary support. [*Patrick v Turkelson*, 322 Mich App 595, 617; 913 NW2d 369 (2018) (quotation marks and citations omitted).]

Pertinently, "[c]ausation is an issue that is typically reserved for the trier of fact unless there is no dispute of material fact." *Id*. After the accident, plaintiff was transferred to the hospital and complained of neck and shoulder pain. Three days later, plaintiff followed up with her primary care physician and again complained of neck and shoulder pain. About two weeks later, plaintiff called her primary care physician and complained of pain and indicated she wanted to try physical therapy. About a month later, plaintiff was diagnosed with a sprain of cervical spine ligaments, traumatic spondylopathy in cervical region, flattening of cervical lordotic curve, decreased range of motion, and an elevated shoulder because of a muscle spasm. Therefore, plaintiff's evidence demonstrated a "logical sequence of cause and effect" that these impairments were a result of the accident. *Id*. As such, plaintiff's medical records provided evidence of "an impairment that is evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function" such that there was a question of fact on the issue of objectively manifested impairment sufficient to survive summary disposition. *McCormick*, 487 Mich at 196; see also MCL 500.3135(5)(a).

Turning to the second prong, "[w]hether a body function has great 'value,' 'significance,' or 'consequence' will vary depending on the person. Therefore, this prong is an inherently subjective inquiry that must be decided on a case-by-case basis . . . ." *McCormick*, 487 Mich at 199. Historically, this Court has recognized: "The ability to move one's back is an important body function." *Chumley v Chrysler Corp*, 156 Mich App 474, 481; 401 NW2d 879 (1986) (citations omitted).[3] In this case, the evidence suggests that the impaired body functions were important to plaintiff. Plaintiff's deposition testimony established her pain impacted her ability to walk, participate in recreational activities, and perform certain physical tasks at work.

Turning to the third prong, plaintiff presented evidence these impairments affected her general ability to live her normal life. Evidence was presented that plaintiff missed eight days of work because of the accident, and Dr. Huraibi disabled plaintiff from housework from April 3, 2019 until May 15, 2019, after the accident. Additionally, plaintiff testified she could no longer bowl or play softball, which were activities she participated in regularly before the accident. Importantly, as the *McCormick* Court explained: "[t]he statute merely requires that a person's general ability to lead his or her normal life has been *affected*, not destroyed." *Id*. at 202. Suitably,

---

[3] While decisions issued before November 1990 should be "considered to be precedent and entitled to significantly greater deference than are unpublished cases," this Court is not "strictly required to follow" such decisions. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018) (emphasis omitted).

"there is no quantitative minimum as to the percentage of a person's normal manner of living that must be affected." *Id*. at 203. Moreover, "the statute does not create an express temporal requirement as to how long an impairment must last in order to have an effect on the person's general ability to live his or her normal life." *Id*. As such, plaintiff presented evidence from which a rational trier of fact could conclude that the impairments affected her general ability to lead her normal life.

Defendant argues that plaintiff has not suffered an objectively manifested impairment from the accident and does not meet the threshold set forth by MCL 500.3135 to receive relief. Defendant suggests that there is no factual dispute because the only injuries alleged by plaintiff are soft tissue in nature and that plaintiff's ability to lead her normal life has not been affected as a result of the accident. However, neither the case law nor MCL 500.3135 render persistent "soft tissue" injuries nonrecoverable, and here, plaintiff met her burden of establishing the existence of genuine issues of disputed fact material to a determination of whether she suffered a serious impairment. When viewing the evidence in the light most favorable to plaintiff, as we must, the evidence reasonably supports a finding that she has chronic back, neck, and shoulder pain impairments that are objectively manifested by a reduced range of motion and muscle spasms, and which have affected her general ability to lead her normal life. As such, the trial court erred by granting summary disposition in favor of defendant.

## IV. CONCLUSION

Reversed and remanded for additional proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Noah P. Hood
/s/ Allie Greenleaf Maldonado