CHUMLEY v CHRYSLER CORPORATION

Docket No. 84306. Submitted January 21, 1986, at Detroit. Decided
     December 2, 1986

Plaintiff, Molly Chumley, brought an action against defendants,
     Chrysler Corporation and Thomas James Bauer, Jr., in the
     Macomb Circuit Court for damages for noneconomic losses as a
     result of injuries she received in an automobile accident. Depo-
     sition evidence indicated, among other things, that plaintiff had
     a herniated intervertebral disc, muscle spasms and an interrup-
     tion in the normal lordotic curvature. The evidence as to the
     extent of plaintiff's injuries was equivocal. The court, George R.
     Deneweth, J., granted summary judgment for defendants.
     Plaintiff appealed.

     The Court of Appeals *held:*

     The court erred in granting summary judgment for defen-
     dants.

     1. In order to be compensable under the no-fault act, plain-
     tiff's injuries must be serious, impair an important body func-
     tion, and be objectively manifested.

     2. Plaintiff's injuries were objectively manifested. They dealt
     with plaintiff's ability to lift, bend, twist, stand, and sit, which
     are important functions.

     3. There was a dispute as to the extent of plaintiff's injuries,
     and thus the seriousness of her impairment.

     4. Plaintiff's other issue was not raised in the trial court and
     is waived for appeal.

     Reversed and remanded.

1. INSURANCE — NO-FAULT — TORT LIABILITY — SERIOUS IMPAIRMENT
     OF BODY FUNCTION.

     Whether an injury is a serious impairment of body function

REFERENCES

Am Jur 2d, Appeal and Error §§ 709, 710.

Am Jur 2d, Automobile Insurance §§ 348, 349, 358.

What constitutes sufficiently serious personal injury, disability,
     impairment, or the like to justify recovery of damages outside of
     no-fault automobile insurance coverage. 33 ALR4th 767.

Validity and construction of "no-fault" automobile insurance plans.
     42 ALR3d 229.

under the no-fault act so as to give rise to tort liability for noneconomic loss is a question of statutory construction to be decided by the trial court; where there is no factual dispute regarding the nature and extent of a plaintiff's injuries or where a factual dispute is not material to the determination, the court must decide as a matter of law whether the plaintiff has suffered a serious impairment of body function (MCL 500.3135; MSA 24.13135).

2. INSURANCE — NO-FAULT — TORT LIABILITY — SERIOUS IMPAIRMENT OF BODY FUNCTION.

Whether an injury results in a serious impairment of body function, for purposes of the no-fault act, must be decided on a case-by-case basis, and in order to be considered a serious impairment of body function the impairment must be of an important body function and the injuries must be objectively manifested (MCL 500.3135; MSA 24.13135).

3. APPEAL — PRESERVING QUESTION — WAIVER.

A claim not raised by a party until appeal is waived.

*Gerald F. Lindeborg,* for plaintiff.

*Dice, Sweeney, Sullivan, Feikens, Hurbis & Foster, P.C.* (by *Robert H. Feikens*), for defendants.

Before: M. J. KELLY, P.J., and SHEPHERD and M. R. KNOBLOCK,* JJ.

M. R. KNOBLOCK, J. Plaintiff filed suit seeking recovery of damages for personal injuries received in an automobile collision that occurred on February 9, 1982. After concluding as a matter of law that plaintiff's injuries were insufficient to constitute a serious impairment of body function as required by the automobile no-fault act, MCL 500.3135; MSA 24.13135, the trial court granted summary judgment in favor of defendants. Plaintiff appeals as of right.

The factual record is established by the deposition testimony of plaintiff and various treating

* Circuit judge, sitting on the Court of Appeals by assignment.

physicians. It appears that plaintiff has been suffering from various back ailments stemming from several accidents in which she was involved beginning with an automobile accident that occurred on February 13, 1976. After this accident, plaintiff complained of problems in her lower back, left shoulder, neck, foot and hip. In August of 1976, she complained of pain in the lumbosacral area, dizziness, anxiety and nervousness. The record does not establish what medical treatment, if any, plaintiff received for this injury.

In January, 1977, and again in March, 1977, plaintiff injured her back as the result of falling in a bathtub. Plaintiff complained of pain in the lower back and lower extremities, and headaches. She was hospitalized and on April 13, 1977, was administered a myelogram. This test showed some pressure at L-4 and L-5, however, the attending physician, Dr. S. A. Colah, did not feel that surgery was necessary. Plaintiff's condition was diagnosed as acute lumbar strain and nervous tension. Dr. Colah also noted in his records that plaintiff was a "somewhat neurotic individual." Plaintiff took pain medications and wore a back brace at least through September, 1979. She was not seen again by Dr. Colah until September 10, 1979, although she had telephoned his office during this period eleven times complaining of pain and requesting medication. At the time of this visit, plaintiff complained of pain in the back and frequent headaches and appeared extremely nervous. An objective neurological examination was performed and the results were normal. Her condition was diagnosed as "migraine and chronic degenerative disc disease."

On September 14, 1979, plaintiff was involved in another automobile accident after which she was hospitalized for eighteen days. Her treating physi-

cians for this injury were not deposed but Dr. Colah examined her on October 19, 1979. Plaintiff complained of pain in the lower lumbar region, however, the results of the examination were normal and no evidence of spasm was detected. Plaintiff was advised to gradually increase her activities, to use heat on the painful area, and to continue wearing the back brace that she had been wearing since the 1977 fall. Her prescription for muscle relaxants and pain medication was renewed.

Plaintiff again saw Dr. Colah on January 26, 1980, complaining of intermittent severe headaches, numbness in the feet and a burning sensation in the back. She stated her symptoms had worsened since the September, 1979, accident. Her condition was again diagnosed as chronic lumbar strain and anxiety. On February 1, 1980, plaintiff complained of severe pain and requested that she be admitted to the hospital. She was admitted and given conservative treatment of traction and physiotherapy. Dr. Colah could find nothing objectively wrong during this admission. The day after her release from the hospital, plaintiff called Dr. Colah complaining of pain. An appointment was made for plaintiff to visit Dr. Colah's office on February 28, 1980, but she failed to keep the appointment. Dr. Colah had no further contact with plaintiff. Throughout his treatment of plaintiff, Dr. Colah never detected any muscle spasms and plaintiff had full range of motion, although complaining of pain.

On February 9, 1982, plaintiff was involved in the automobile accident from which this lawsuit derives. At her deposition, plaintiff testified that she was driving thirty to thirty-five miles per hour when defendant Bauer's automobile struck her automobile in the rear. She stopped her vehicle

and defendant Bauer's hit her again. Although the only apparent damage to her vehicle was a bent tailpipe, plaintiff testified that her neck snapped back and that, when she tried to get out of the vehicle, she found that her "back was not right." After remaining in the vehicle for ten or fifteen minutes, plaintiff went into the gas station where her vehicle had been pushed and sat there. Later that evening, she was driven by her son to a hospital emergency room near his home where she was given medication, released and advised to see her family physician. Because he was out of town, plaintiff did not see her family physician, Dr. Schermerhorn, until February 15, 1982.

Dr. Schermerhorn testified that he had placed plaintiff on a six-month work disability on August 17, 1981, for what he diagnosed as lumbar myositis and lumbosacral strain with a possibility of a herniated intervertebral disc. The target date for plaintiff to return to work had been February 17, 1982. When he saw plaintiff on February 15, 1982, she complained of pain in the neck region, in both shoulder blades, and in the low back. She also reported having discomfort in her legs and headaches. This is the first occasion that plaintiff complained of neck and shoulder pain.

When Dr. Schermerhorn examined plaintiff on February 15, 1982, he detected muscle spasms on the right front side of the neck and an interruption in the normal lordotic curvature, neither of which was present prior to the February 9, 1982, accident. His preliminary diagnosis was that plaintiff had a recurrence of lumbar myositis, a possible herniated disc in the low back, and cervical myofascitis. He also began treating plaintiff for elevated blood pressure which he attributed to stress caused by the setback in her recovery. He stated that after the February, 1982, accident "[w]e were

back to square one as far as treatment." He treated plaintiff with ultrasound, a Medcollator (an electronic muscle stimulator) and hot packs to relax the muscles and increase blood flow to promote healing.

Plaintiff testified that she was involved in still another automobile accident on July 27, 1983, at which time her vehicle was struck by a truck. She testified that, after this accident, she experienced pain and "a lot of spasm through my shoulder blade," and her lower back began to bother her again. There was, however, no medical documentation of any injuries as a result of this accident. Dr. Schermerhorn testified that, although he did not examine plaintiff immediately after the 1983 accident, he continued to treat her with ultrasound, a Medcollator and hot packs. This treatment continued until April, 1984, when plaintiff stopped treating with Dr. Schermerhorn after he suggested she see a psychiatrist for consultation. At that time the muscle spasms had improved but plaintiff was still complaining of pain in the neck and low back. Between February 15, 1982, and April, 1984, plaintiff received 203 physical treatments. In June, 1984, plaintiff was administered a CAT scan which revealed a disc protrusion or herniated disc at the L-3, L-4 level.

Plaintiff first claims on appeal that the circuit court erred in finding as a matter of law that she had not sustained a serious impairment of an important body function. In granting summary judgment, the court considered the effect of plaintiff's injury on her general ability to live a normal life. The court indicated that it took into account plaintiff's claim that she could do chores around the house but at times had to get off of her feet. The court also stated that "nothing in the record suggests plaintiff is unable to engage in gainful

employment in an area which does not require lifting or prolonged standing." After reviewing all the evidence in the record, we conclude that, although this is a marginal case, the circuit court erred in granting summary judgment for defendants. We find that there is a factual dispute as to the nature and extent of plaintiff's injuries which is material to a determination of whether plaintiff has suffered a serious impairment of an important body function.

Under the Michigan no-fault act, a person remains subject to tort liability for noneconomic loss occasioned by his use, maintenance or operation of a motor vehicle only if the injured party has suffered death, serious impairment of a body function or permanent serious disfigurement. MCL 500.3135; MSA 24.13135. Our Supreme Court has held that the determination of what injuries fall within the ambit of the phrase "serious impairment of body function" is properly a question of statutory construction to be resolved by the trial court. *Cassidy v McGovern,* 415 Mich 483; 330 NW2d 22 (1982). When there is no factual dispute regarding the extent of a plaintiff's injuries, or where there is a factual dispute as to the nature and extent of the injuries but the dispute is not material to the determination of whether a plaintiff has suffered a serious impairment of a body function, the trial court is to rule as a matter of law whether the threshold requirement of the statute has been met. *Id.,* p 488.

In reviewing motions for summary judgment in cases involving serious impairment of a body function, the *Cassidy* Court provided three general guidelines. First, "impairment of body function" is to be interpreted as referring to "impairment of *important* body functions." Second, the impairment must be "serious." Third, recovery for "seri-

ous impairment of body function" is predicated upon a demonstration that objectively manifested injuries exist. *Id.,* pp 504-505. See also *Williams v Payne,* 131 Mich App 403, 409; 346 NW2d 564 (1984).

In the instant case, we find that an important body function of plaintiff has been impaired. Several doctors testified that plaintiff has a limited range of low back movement and that plaintiff is restricted in the amount of weight she can lift. Plaintiff also has difficulty standing or sitting for long periods of time. In its opinion, the trial court took into account the fact that plaintiff could not lift much weight or stand for long periods of time, but did not note the fact that plaintiff also could not sit for considerable periods of time. The ability to move one's back is an important body function. *Argenta v Shahan,* 135 Mich App 477, 488; 354 NW2d 796 (1984), lv gtd 421 Mich 859 (1985). See also *Harris v Lemicex,* 152 Mich App 149; 393 NW2d 559 (1986).

Further, plaintiff's injuries have been objectively manifested by medical examinations revealing a herniated disc, loss of the natural curvature of plaintiff's cervical spine and muscle spasms. The herniated disc was verified by a CAT scan. We find that this meets the requirement of objective medical measurement of an injury as stated in *Guerrero v Schoolmeester,* 135 Mich App 742, 748; 356 NW2d 251 (1984). In *Sherrell v Bugaski,* 140 Mich App 708; 364 NW2d 684 (1984), it was held that the loss of a normal spinal curvature is an objective finding, although it was not held to be a serious impairment of a body function in that case. Here, plaintiff has lost some of the natural curvature of her cervical spine. Further, objective evidence of muscle spasms, such as evidenced by medical examination and palpation of the tissues,

constitutes objective manifestation of an injury. *Harris v Lemicex, supra; Franz v Woods,* 145 Mich App 169; 377 NW2d 373 (1985); *contra, Flemings v Jenkins,* 138 Mich App 788; 360 NW2d 298 (1984). In this case, while Dr. Schermerhorn stated that the muscle spasms in plaintiff's neck "rapidly resolved," the spasms were detected as late as 1984.

Taking all of the evidence presented into account, we find that there was objective manifestation of impairment to an important body function. Therefore, the determinative question is whether the impairment of plaintiff's body function was serious enough to impinge on her general ability to live a normal life. Factors to be considered include the extent of the injury, treatment required, duration of disability, extent of residual impairment, and prognosis for eventual recovery, which have an impact on her ability to live a normal life. See *Cassidy, supra,* pp 504-505. Several panels of this Court have found that plaintiffs have not been seriously impaired if they are able to live a normal life and continue to work. See *Franz, supra,* p 177. In the instant case, Dr. Weisman testified:

> There is no question she would have difficulty doing virtually any type of work. I think she's capable of doing daily activities, such as getting herself up in the morning and dressing, but in terms of doing any physical labor involving any lifting or any prolonged standing, even prolonged sitting, she could not do it.

Dr. Berke testified:

> *Q.* [By plaintiff's attorney] When you first examined her on September 13, 1982, did you formulate an opinion as to whether or not she could return to her usual occupation as a cashier and hostess?

*A.* I would feel that based upon her continuing symptoms, as long as she had pain, that she should refrain from vocational activities which involved prolonged standing, sitting, bending, lifting and twisting.

*Q.* Would walking aggravate that condition, Doctor, in your opinion?

*A.* Walking might also increase her symptoms, therefore, be undesirable.

*Q.* Doctor, you said prolonged standing. Do you have a maximum time period where she could stand?

*A.* Well, this is of course highly individual and depends upon the patient's tolerance and severity of her pain. It might be as short as fifteen minutes to a half hour that might produce symptoms.

In our opinion, the inability of this plaintiff to engage in employment that requires lifting, bending, twisting, prolonged standing, or prolonged sitting is tantamount to an inability to engage in any employment. We find that there is a factual dispute regarding plaintiff's physical restrictions limiting her ability to work which is material to the determination of whether she has suffered a serious impairment of a body function.

We note that plaintiff did not testify that she could perform all household chores. Plaintiff was asked if she was able to do "*any* chores around the house." Plaintiff responded affirmatively, but she also stated that she had to sit down at times for an hour or so. Plaintiff did testify that she could still cook for the family. Therefore, all that was established is that plaintiff can do *some* household chores. We also note that plaintiff was on disability for back problems at the time of the February 9, 1982, auto accident with defendant Bauer. However, Dr. Schermerhorn testified that plaintiff was preparing to go back to work on February 17,

1982. Dr. Schermerhorn testified that the intervening accident set plaintiff's treatment back to "square one" after plaintiff had been improving. Also, while plaintiff had had a long and continuous history of back problems, there is no testimony that any doctor felt muscle spasms prior to the February, 1982, accident. We conclude that summary judgment was inappropriately granted for defendants here because a dispute does exist as to the extent of plaintiff's injuries which is material to the seriousness of her impairment. *Cassidy, supra*, p 502. See also *Williams v McGowan*, 135 Mich App 457, 462-463; 354 NW2d 382 (1984).

Plaintiff next argues on appeal that the trial court erred in granting summary judgment when plaintiff had also claimed work loss in excess of the three-year no-fault limitation. MCL 500.3135(2)(c); MSA 24.13135(2)(c) permits tort liability for wage loss if disability continues for more than three years. Contrary to plaintiff's assertions, her complaint does not make any claim for future wage loss that would extend beyond the three-year period required by statute. We therefore find that this issue was not raised below and has been waived. *Casualty Reciprocal Exchange v Vancil*, 100 Mich App 284, 286-287; 299 NW2d 49 (1980).

The summary judgment order is reversed and this case is remanded for trial.