*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SERENA ROBINSON,

        Plaintiff-Appellant,

v

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

        Defendant,

and

THAKER AZEEZ,

        Defendant-Appellee.

UNPUBLISHED
November 9, 2023

No. 364047
Ingham Circuit Court
LC No. 21-000022-NI

Before: GLEICHER, P.J., and JANSEN and RICK, JJ.

PER CURIAM.

Plaintiff Serena Robinson filed this lawsuit seeking third-part no-fault liability damages under MCL 500.3135. The trial court granted summary disposition to defendant Thaker Azzeez, finding that Robinson's injuries were not objectively manifested and did not affect her general ability to lead a normal life. Because material questions of fact exist regarding the nature and extent of Robinson's injuries, we reverse and remand for further proceedings.

## I. BACKGROUND

This case arises from an accident involving three vehicles traveling in the same direction. Robinson, driving in the left lane, activated her left turn signal as she approached an intersection. Azeez was behind her and collided with Robinson's car. The impact turned Robinson's vehicle into the right lane where she was struck again by another car. Azeez was issued a citation. Robinson declined medical attention at the scene, but went to urgent care the next day complaining of neck and back pain.

-1-

Robinson alleges that due to Azeez's negligence she suffered injuries constituting a serious impairment of body function. Azeez moved for summary disposition under MCR 2.116(C)(10), arguing that Robinson did not suffer a threshold injury as required by MCL 500.3135 and *McCormick v Carrier*, 487 Mich 180; 795 NW2d 517 (2010). Azeez asserted that Robinson's injuries were not objectively manifested and did not affect her general ability to lead a normal life. The trial court agreed, granting Azeez summary disposition and later denying Robinson's motion for reconsideration. This appeal followed.

## II. ANALYSIS

We review a trial court's decision on a motion for summary disposition de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Id*. at 160. "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*.

Viewed from the proper perspective, Robinson's evidence created genuine issues of material fact regarding whether her injuries were objectively manifested and affected her general ability to lead a normal life.

MCL 500.3135 permits an injured person to file a negligence action against another involved in a motor vehicle accident "if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). Whether the injured person has suffered a serious impairment is a question of law for the court if "[t]here is no factual dispute concerning the nature and extent" of the alleged injuries, or when an immaterial factual dispute exists. MCL 500.3135(2)(a). See also *McCormick*, 487 Mich at 193.

At issue here is whether Robinson suffered a serious impairment of body function. "[T]he test for establishing a serious impairment of body function requires showing '(1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life.' " *Patrick v Turkelson*, 322 Mich App 595, 606; 913 NW2d 369 (2018), quoting *McCormick*, 487 Mich at 195. See also MCL 500.3135(5). Under MCL 500.3135(5):

> As used in this section, "serious impairment of body function" means an impairment that satisfies all of the following requirements:
>
> (a) It is objectively manifested, meaning it is observable or perceivable from actual symptoms or conditions by someone other than the injured person.
>
> (b) It is an impairment of an important body function, which is a body function of great value, significance, or consequence to the injured person.
>
> (c) It affects the injured person's general ability to lead his or her normal life, meaning it has had an influence on some of the person's capacity to live in his

-2-

or her normal manner of living. Although temporal considerations may be relevant, there is no temporal requirement for how long an impairment must last. This examination is inherently fact and circumstance specific to each injured person, must be conducted on a case-by-case basis, and requires comparison of the injured person's life before and after the incident.

See also *McCormick*, 487 Mich at 215.

Turning to the first prong, *McCormick* explained that an objectively manifested impairment "is an impairment that is evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function," i.e., one that is "observable or perceivable from actual symptoms or conditions." *Id*. at 196. The mere existence of pain and suffering, standing alone, does not satisfy the serious impairment threshold; there must be evidence showing "a physical basis for [plaintiff's] subjective complaints of pain and suffering." *Id*. at 197-198 (quotation marks and citation omitted). This "generally requires medical testimony." *Id*. at 198. "[W]hen considering an 'impairment,' the focus 'is not on the injuries themselves, but how the injuries affected a particular body function.' " *Id*. at 197 (citation omitted).

Although Robinson never submitted medical testimony explicitly connecting her alleged injuries and associated impairments to the accident, she presented various medical records satisfying the causation requirement. The day after the accident, she sought treatment at an urgent care facility and reported neck pain and stiffness, back pain, headaches, and muscle spasms she attributed to the accident. Imaging of her spine taken that day revealed no significant findings. But a physician's examination revealed abnormal pulling, flexion, and muscle spasms in her neck; abnormal tenderness in her back and shoulders; and abnormal tightness in her midsection.

Two days later, Robinson followed up with her primary doctor and again reported back pain and stiffness, as well as muscle spasms. She requested a referral for physical therapy because her prescription pain medication was not alleviating her pain and made her drowsy. Two weeks later and after multiple sessions of physical therapy, Robinson continued to report "significant neck and back pain," as well as right knee pain. An examining medical professional characterized the knee pain as "probably from the [accident] but has been increasing in severity for the past week." The physician's examination that day revealed tenderness and tightness in Robinson's neck, as well as swelling, tenderness, and signs of injury to her musculoskeletal functioning, though it is not clear whether these latter findings referred to Robinson's back, knee, or both. Later that month, x-ray results for Robinson's knee and spine were "grossly normal except for findings of suggestive muscle spasms."

In November 2020 and early 2021, MRIs of Robinson's spine showed small disc bulges and mild facet osteoarthritis. Throughout 2021, based on more MRIs, she was continually diagnosed with mild degenerative changes of her thoracic spine and chronic midline lower back pain. She was treated with several injections and a rhizotomy with radiofrequency ablation as well as osteopathic manipulation, and was excused from work from the date of the accident until April 26, 2022.

Critically, Robinson's medical records provide objective evidence that she suffered various post-accident abnormalities in her neck, back, and knee, including tightness, tenderness, and

swelling in these areas. Cf. *McCormick*, 487 Mich at 218 (medical records showing reduced range of motion support the existence of an objectively manifested impairment). Further, two separate medical providers determined that Robinson suffered muscle spasms after the accident. This Court has determined that medically observable muscle spasms are evidence of an objectively manifested impairment. See *Bennett v Oakley*, 153 Mich App 622, 630; 396 NW2d 451 (1986[1]); *Chumley v Chrysler Corp*, 156 Mich App 474, 481; 401 NW2d 879 (1986); *Franz v Woods*, 145 Mich App 169, 176-177; 377 NW2d 373 (1985), overruled on other grounds in *DiFranco v Pickard*, 427 Mich 32; 398 NW2d 896 (1986), superseded in part by 1995 PA 222. Accordingly, the evidence here, while not overwhelming, is not so thin as to preclude a reasonable juror from concluding that Robinson suffered an objectively manifested impairment as a result of the accident.

The trial court essentially based its ruling on Robinson's injuries and impairments predating the accident at issue, notably finding the defense medical examiner's determinations regarding Robinson's condition "compelling." Although the examiner concluded that there was no evidence of any ongoing medical condition related to the accident and that Robinson's symptoms actually stemmed from long-term problems, the court's deference to the defense examiner elided it's responsibility to view all the evidence in a light most favorable to Robinson.

Viewed in a light most favorable to Robinson, the evidence shows that she was diagnosed with scoliosis as early as 2005, and was treated intermittently for back and neck pain, headaches, knee pain, and muscle spasms in 2009, from 2015 to 2016, and from 2018 to 2020. Robinson acknowledged her prior scoliosis diagnosis and her history of occasional headaches, but denied experiencing any impact on her regular activities attributable to a chronic disease, illness, or condition pre-dating the accident. And while acknowledging a history of back pain associated with her scoliosis, Robinson stated that she only experienced a few isolated flare ups of scoliosis-related pain in all her years of having the condition. In contrast, Robinson described recently experiencing "a lot" of consistent, worsening back pain originating from the accident. And she testified to numerous, significant changes in her daily activities since the accident.

While Robinson had some preexisting medical conditions, their exacerbation by a subsequent injury may result in an impairment of body function. See *Washington v Van Buren Co Rd Comm*, 155 Mich App 527; 400 NW2d 668 (1986). Tort damages have long been recoverable in Michigan to compensate for the aggravation of a preexisting condition. See *Schwingschlegl v City of Monroe*, 113 Mich 683; 72 NW 7 (1897); *Mosley v Dati*, 363 Mich 690; 110 NW2d 637 (1961). The pertinent inquiry is whether the Robinson did, in fact, suffer aggravation of a preexisting condition because of the accident. Ultimately, the evidence conflicts. But when considering a summary disposition motion, a court may not "make findings of fact; if the evidence

---

[1] Although this Court is not required to follow cases decided before November 1, 1990, see MCR 7.215(J)(1), a published case decided by this Court "has precedential effect under the rule of stare decisis," MCR 7.215(C)(2). See also *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018) (stating that although this Court is not "strictly required to follow uncontradicted opinions from this Court decided before November 1, 1990," those opinions are nonetheless "considered to be precedent and entitled to significantly greater deference than are unpublished cases.").

before it is conflicting, summary disposition is improper." *Lysogorski v Bridgeport Charter Twp*, 256 Mich App 297, 299; 662 NW2d 108 (2003) (quotation marks, citation, and emphasis omitted). Thus, a question of fact exists concerning whether Robinson suffered an objectively manifested impairment.

Regarding the second prong, an important body function is " '[m]arked by or having great value, significance, or consequence,' " to the individual's life. *McCormick*, 487 Mich at 199 (alteration in original), quoting The American Heritage Dictionary (2d college ed, 1982); see also MCL 500.3135(5)(b). This "inherently subjective inquiry" is considered on a "case-by-case basis, because what may seem to be a trivial body function for most people may be subjectively important to some, depending on the relationship of that function to the person's life." *McCormick*, 487 Mich at 199. Robinson testified that she experiences back, neck, and knee pain which, in particular, affected her ability to work as a delivery driver and to walk long distances. The ability to use and move one's back is an important body function. *Chumley v Chrysler Corp*, 156 Mich App 474, 481-482; 401 NW2d 879 (1986). Accordingly, Robinson presented sufficient evidence that the alleged impairment involved an important body function.

Regarding the third prong, an impairment of an important body function affects a person's ability to lead his or her normal life when it "influence[s] some of the person's power or skill, i.e., the person's capacity, to lead a normal life." *McCormick*, 487 Mich at 201. A determination of this factor involves "a subjective, person- and fact-specific inquiry that must be decided on a case-by-case basis," and "necessarily requires a comparison of the Robinson's life before and after the incident." *Id*. at 202; see also MCL 500.3135(5)(c).

Robinson testified that from the day of the accident until the date of her deposition, she was not cleared to return to work. She recalled that before the accident she would walk and work out after work, spend time with her niece, go places, and spend time with her husband. She asserted that since the accident, she cannot walk for as long or go on the trampoline with her niece, and intimacy with her husband decreased. She used to be able to walk five miles a day, but now can only walk about two miles, with pain doing so. Robinson testified that she had no anxiety before the accident, and was later referred to a therapist after because she was afraid to drive. Given this evidence describing the post-accident effects on her personal and professional life, a question of fact exists regarding whether Robinson meets the third prong. As of the date of her deposition, she had not returned to work.

The evidence reveals a factual dispute concerning the nature and extent of Robinson's injuries that is material to a determination of whether she suffered a serious impairment. Viewed in the light most favorable to Robinson, the evidence supports that she experienced significant, chronic pain following the accident, that the impairment is objectively manifested by muscle spasms and the other abnormal post-accident findings, and that it has affected (and continues to affect) her general ability to lead his normal life.

We reverse and remand for further proceedings. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Michelle M. Rick

-5-