*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRANDON BINGHAM,

        Plaintiff-Appellant,

v

AMICA MUTUAL INSURANCE COMPANY,

        Defendant,

and

TIFFANY PRITCHETT,

        Defendant-Appellee.

UNPUBLISHED
May 30, 2024

No. 365404
Oakland Circuit Court
LC No. 2021-188245-NI

Before: GARRETT, P.J., and SERVITTO and REDFORD, JJ.

PER CURIAM.

In this third-party, no-fault action, plaintiff, Brandon Bingham, appeals as of right the trial court's order granting defendant, Tiffany Pritchett,[1] summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact).[2] On appeal, plaintiff argues that the trial court

_____

[1] Throughout this opinion we refer to defendant-appellee, Tiffany Pritchett as "defendant." Defendant, Amica Mutual Insurance Company, will be referred to by name.

[2] Under MCR 7.203(A), this Court does not have jurisdiction for an appeal of right until entry of "a final order as defined in MCR 7.202(6)." MCR 7.202(6) defines a final order as the first order "that disposes of all the claims and adjudicates the rights and liabilities of all the parties." In this case, the claims against defendant were dismissed in a nonfinal order granting her summary disposition entered on August 31, 2022. Subsequently, a stipulated final order that disposed of all the claims of all the parties was entered on March 1, 2023. "[A] party claiming an appeal of right from a final order is free to raise issues on appeal related to prior orders." *Green v Ziegelman*, 282

-1-

erred when it held that there was no genuine issue of material fact whether plaintiff met the requisite threshold to establish a serious impairment of a bodily function under the no-fault act, MCL 500.3101 *et seq*. For the reasons stated in this opinion, we reverse the grant of summary disposition to defendant and remand to the trial court for further proceedings.

I. BACKGROUND

This case arises out of injuries allegedly sustained from a motor vehicle accident on July 11, 2020. The day of the accident, defendant failed to yield at a stop sign and struck the side of plaintiff's vehicle at an intersection in Farmington Hills, Michigan. Immediately after the accident, plaintiff complained of lower back pain. He was transported to the hospital by ambulance for an evaluation. His emergency physician noted that plaintiff could ambulate at the scene of the accident and at the hospital. He further noted that plaintiff's left paraspinal muscles were tender to palpation. Plaintiff was released the same day after being prescribed nonsteroidal anti-inflammatory drugs (NSAIDs) and gentle massage.

Plaintiff did not immediately follow up with his primary care physician. However, several months after the accident, he started visiting a chiropractor for increased pain. Seven months after the accident in February 2021, a physician at C-Spine Orthopedics evaluated plaintiff for pain in his neck and back. He received injections to block pain. Plaintiff also started physical therapy three days a week. At his initial appointment, plaintiff's physical therapist diagnosed him with lower lumbar tenderness, spasms, limited strength, and limited range of motion. Plaintiff also underwent two MRIs in February and August 2021. The February 2021 thoracic MRI showed "a bulging disc at C6-C7 indenting the ventral cord" and no significant degenerative changes were noted. The February 2021 lumbar MRI showed a bulging disc with central disc protrusion at L5-S1. The August 2021 MRI showed disc herniation at C5-C6 and prominent disc herniation at C6-C7.

Plaintiff filed a complaint against defendant and Amica Mutual Insurance Company. In a deposition, plaintiff stated that he was unable to engage in his normal activities, such as bowling and cleaning, to the same extent after the accident. He explained that he used to bowl four or five nights a week and competed in tournaments. He stated that after the accident, he could not bowl as much or as long and that his average score dropped. Additionally, he stated that he had to hire his friend to clean the house and that he could not unload the dishwasher anymore.

Defendant hired a doctor to perform an independent medical evaluation (IME) of plaintiff. The evaluator noted that plaintiff had preexistent degenerative disc disease in his back, which the accident may have aggravated. Defendant moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff did not meet the threshold requirements of a serious impairment of body function. The trial court granted this motion and denied plaintiff's motion for reconsideration. This appeal follows.

Mich App 292, 301 n 6; 767 NW2d 660 (2009) (quotation marks and citation omitted; alteration in original). Accordingly, we have jurisdiction over the trial court's grant of summary disposition.

## II. STANDARD OF REVIEW

We review a trial court's decision regarding a motion for summary disposition de novo. *Jewett v Mesick Consol Sch Dist*, 332 Mich App 462, 470; 957 NW2d 377 (2020). Under MCR 2.116(C)(10), a party is entitled to summary disposition when the evidence does not present a genuine issue of material fact. *Id.* "A genuine issue of material fact exists when the record, viewed in the light most favorable to the nonmoving party, leaves open an issue upon which reasonable minds might differ." *MacDonald v Ottawa Co*, 335 Mich App 618, 622; 967 NW2d 919 (2021) (quotations marks and citation omitted). "The reviewing court should evaluate a motion for summary disposition under MCR 2.116(C)(10) by considering the substantively admissible evidence actually proffered in opposition to the motion." *Jewett*, 332 Mich App at 470 (quotation marks and citation omitted). This includes "affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties." *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). "A court may not make findings of fact; if the evidence before it is conflicting, summary disposition is improper." *Piccione v Gillette*, 327 Mich App 16, 19; 932 NW2d 197 (2019) (quotation marks and citation omitted; emphasis omitted). We do not make factual findings or weigh credibility. *Burkhardt v Bailey*, 260 Mich App 636, 647; 680 NW2d 453 (2004).

## III. TORT THRESHOLD

Plaintiff argues that the trial court erred when it granted summary disposition to defendant because a genuine issue of material fact existed regarding a threshold impairment. Because plaintiff presented sufficient evidence of a threshold impairment to overcome the grant of summary disposition, we agree.

Under MCL 500.3135(1), "[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." Plaintiff did not allege that he suffered death or permanent serious disfigurement. Therefore, to overcome a motion for summary disposition, plaintiff must establish a question of fact that he suffered a "serious impairment of body function," which means an impairment that meets all of the following criteria:

> (a) It is objectively manifested, meaning it is observable or perceivable from actual symptoms or conditions by someone other than the injured person.

> (b) It is an impairment of an important body function, which is a body function of great value, significance, or consequence to the injured person.

> (c) It affects the injured person's general ability to lead his or her normal life, meaning it has had an influence on some of the person's capacity to live in his or her normal manner of living. Although temporal considerations may be relevant, there is no temporal requirement for how long an impairment must last. This examination is inherently fact and circumstance specific to each injured person, must be conducted on a case-by-case basis, and requires comparison of the injured person's life before and after the incident. [MCL. 500.3135(5).]

This test was first established by the Supreme Court in *McCormick v Carrier*, 487 Mich 180, 215; 795 NW2d 517 (2010), and later codified by the Legislature.[3] As noted in the statute, the serious impairment analysis "is inherently fact- and circumstance-specific and must be conducted on a case-by-case basis." *McCormick*, 487 Mich at 215. The issue of whether a person suffered a serious impairment of body function is a question of law if there is no factual dispute concerning the nature and extent of the person's injuries. MCL 500.3135(2).

## A. OBJECTIVELY MANIFESTED IMPAIRMENT

Under the first prong, an objectively manifested impairment is "evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function," or stated in other words, it is "observable or perceivable from actual symptoms or conditions." *McCormick*, 446 Mich at 196. The "proper inquiry is whether the impairment is objectively manifested, not the injury or its symptoms." *Id*. at 197. Impairment is defined as the "state of being impaired," and being impaired is defined as "weakened, diminished, or damaged" or "functioning poorly or inadequately." *Id*. (quotation marks and citation omitted). Subjective complaints of pain and suffering are insufficient to show impairment without "introduc[ing] evidence establishing that there is a physical basis for their subjective complaints of pain and suffering." *Id*. at 198 (quotation marks and citation omitted). This showing generally, but not always, requires medical testimony. *Id*.

Plaintiff established a question of fact whether an impairment is objectively manifested. Evidence exists in the record demonstrating that plaintiff has a bulging disc in his neck and sore muscles in his back. At the hospital the day of the accident, plaintiff's left lumbar paraspinal muscles were tender when palpated. On February 4, 2021, plaintiff was examined by physical therapists, who noted he suffered from "[l]ower lumbar tenderness and spasm. Limited lumbar [range of motion] ROM/strength." This Court has held "objective evidence of muscle spasms, such as evidence by medical examination and palpation of the tissues, constitutes objective manifestation of an injury." *Chumley v Chrysler Corp*, 156 Mich App 474, 481-482; 401 NW2d 879 (1986).[4]

In February 2021, plaintiff received an MRI scan of his back, in which "a bulging disc at C6-C7" was observed. In August, 2021, plaintiff received an additional MRI, which noted "[p]rominent disc herniation at the C6-7 level . . . ." On August 31, 2021, plaintiff was assessed by C-Spine Orthopedic, which noted, in terms of his cervical spine, the "left and right paraspinal musculature [were] tender to palpation and [presented] midline tenderness[.]" The IME noted that "there is evidence that [plaintiff] has cervical pain with associated physical examination findings of weakness consistent with C6-C7 cervical nerve involvement based on examination . . . ." This

---

[3] MCL 500.3135(5), as amended by 2019 PA 21 and 2019 PA 22, effective June 11, 2019.

[4] This Court is required to follow cases decided on or after November 1, 1990, see MCR 7.215(J)(1), and a published case decided by this Court "has precedential effect under the rule of stare decisis," MCR 7.215(C)(2).

medical evidence is sufficient to establish that plaintiff's impairment is observable by someone other than plaintiff. See MCL 500.3135(5)(a); *McCormick*, 487 Mich at 218.

Further, the IME stated that plaintiff's impairment "could have been temporarily aggravated from the MVA." This Court has held that "the aggravation or triggering of a preexisting condition can constitute a compensable injury." *Fisher v Blankenship*, 286 Mich App 54, 63; 777 NW2d 469 (2009). The IME report stated:

> Based on the mechanism of the injury, diagnostic imaging studies viewed, physical examination, history-taking interview and the information available through the chart review process, [plaintiff] sustained cervical strain/sprain, aggravation of preexistent degenerative cervical spine disease, degenerative disc disease, spondylosis of the cervical spine, lumbar sprain/strain and thoracic strain/sprain, as a consequence of the [motor vehicle accident] MVA dated July 11, 2020.

These facts create a genuine issue of material fact regarding the first prong such that proper resolution should be left to the trier of fact. The trial court improperly made factual findings at the summary disposition stage when given conflicting evidence regarding plaintiff's objectively manifested impairment. See *Piccione*, 327 Mich App at 19.

## B. IMPORTANT BODY FUNCTION

Under the second prong, the impairment must be of an important body function, which is a body function of great value, significance, or consequence to the injured person. See MCL 500.3135(5)(b); *McCormick*, 487 Mich at 199. This prong is "an inherently subjective inquiry that must be decided on a case-by-case basis, because what may seem to be a trivial body function for most people may be subjectively important to some, depending on the relationship of that function to the person's life." *McCormick*, 487 Mich at 199. Plaintiff reported pain in his back. The use of his back is an important body function, satisfying this prong. See *Chumley*, 156 Mich App at 481 ("The ability to move one's back is an important body function."). Accordingly, plaintiff presented sufficient evidence of an impairment of an important body function to establish a question of fact.

## C. ABILITY TO LEAD HIS NORMAL LIFE

The third prong requires evidence that the impairment affected plaintiff's general ability to lead his normal life by having an influence on his capacity to live in his normal manner. See MCL 500.3135(5)(c); *Patrick v Turkelson*, 322 Mich App 595, 607; 913 NW2d 369 (2018). This inquiry requires the trial court to compare the plaintiff's life before and after the injury. *McCormick*, 487 Mich at 202. "[T]his requires a subjective, person- and fact-specific inquiry that must be decided on a case-by-case basis." *Id.* The trial court should not consider whether the impairment led the plaintiff to completely cease an activity or lifestyle because the statute requires that the plaintiff's general ability to live his life has been affected, not destroyed. *Id.* There is no express temporal or permanency requirement for an impairment to affect a person's general ability to live his normal life. *Id.* at 203.

Plaintiff testified that his back impairment affected his normal life. He frequently bowled before the accident, which he could not do as often after the accident. He asserted experiencing difficulty engaging in other routine activities, like cleaning his bathroom or unloading the dishwasher, which supports that his ability to lead his normal life was affected.

On the other hand, after leaving the hospital on the day of the accident, plaintiff waited several months before seeing a chiropractor. Although plaintiff claimed his impairment affected his ability to participate in bowling tournaments, defendant provided evidence from plaintiff's social media showing him bowling, and his scores from a 2020 tournament, which suggested his ability to bowl was not impacted. Plaintiff missed one day of work the day after the accident, and did not go on short-term disability. In June 2021, he flew to Florida, and when asked if he required help at the airport, plaintiff stated that he took the tram, implying that he required no special assistance. Plaintiff stated that he did not have issues completing his household tasks, except for cleaning his bathroom. He noted that his friend assisted him with putting dishes into cabinets, which the IME report implied was a possibility:

> Due to the sprain/strain injuries, [plaintiff] *may have required temporary assistance with activities of daily living up to 6 to 12 weeks post-accident*. Although, [plaintiff] complains of difficulty with household chores, such as cooking, cleaning, laundry, as well as his hobbies of working out and bowling, all of which would be related to his preexisting degenerative disease.

There is conflicting evidence whether the third factor is satisfied, even if the impairment was temporary and minimal. *Id*. at 202. Given these factual uncertainties, summary disposition was improper. *Piccione*, 327 Mich App at 19.

When viewed in a light most favorable to plaintiff, a genuine issue of material fact existed whether plaintiff presented sufficient evidence of a serious impairment of body function. See *MacDonald*, 335 Mich App at 622. It is unnecessary for us to resolve whether plaintiff did in fact satisfy the three prongs of *McCormick*. Because reasonable minds may differ regarding whether plaintiff met the tort threshold, these conflicting facts are properly resolved by the trier of fact. As a result, summary disposition should not have been granted.[5]

---

[5] Defendant alternatively argues that the trial court correctly granted summary disposition because plaintiff did not present evidence that defendant breached a duty of care to plaintiff by negligently operating her vehicle. Defendant briefly raised this issue in her brief in support of her motion for summary disposition. Although the trial court did not address this issue, it is properly preserved. See *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994) (explaining that a party "should not be punished" for the trial court's failure to address a matter raised). However, in the absence of a trial court ruling on the merits of this claim, we decline to address the issue. This does not preclude either party from moving for summary disposition on the merits of this claim on remand.

Reversed and remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kristina Robinson Garrett
/s/ Deborah A. Servitto
/s/ James Robert Redford