*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CLINTON BORDERS,

        Plaintiff-Appellant,

v

LIBERTY MUTUAL PERSONAL INSURANCE
COMPANY and KEVIN MITCHELL,

        Defendants,

and

CITY OF DETROIT,

        Defendant-Appellee.

UNPUBLISHED
September 09, 2025
9:02 AM

No. 370566
Wayne Circuit Court
LC No. 23-003295-NI

_____

CLINTON BORDERS,

        Plaintiff-Appellant,

v

LIBERTY MUTUAL PERSONAL INSURANCE
COMPANY, KEVIN MITCHELL, and CITY OF
DETROIT,

        Defendants-Appellees.

No. 372562
Wayne Circuit Court
LC No. 23-003295-NI

_____

Before: ACKERMAN, P.J., and M. J. KELLY and O'BRIEN, JJ.

PER CURIAM.

-1-

In this action arising out of a motor-vehicle collision, plaintiff appeals the trial court's order dismissing plaintiff's claim against defendant-appellee, the City of Detroit (the City). We reverse and remand for further proceedings.

## I. BACKGROUND

The collision at issue occurred on August 3, 2021. The collision involved plaintiff and defendant Kevin Mitchell, who was working as a police officer for the City at the time. The collision occurred after Mitchell ran a red light. Both Mitchell and plaintiff testified that, before the collision, Mitchell was stopped at the light when plaintiff approached the intersection. According to plaintiff, his light was green so he slowed down and began turning; then, while making his turn, plaintiff heard Mitchell "burning out" and accelerating through the intersection. According to Mitchell, while he was stopped at the red light, plaintiff approached his green light and stopped, so Mitchell proceeded through his red light, after which plaintiff began his turn. It is uncontested that the collision occurred when the front of plaintiff's vehicle made contact with the back of Mitchell's police vehicle and that the damage to each vehicle was minimal. After the accident, plaintiff told the responding officers that he was not hurt.

But, according to plaintiff, he started feeling sore the next day, and he became continually sorer every day after that until one morning he "couldn't get out of bed and walk," so he called his doctor to schedule an appointment. Plaintiff's pain was mostly on his right side—he was sore from his lower back up, through his right shoulder, to his neck. Plaintiff testified that, since this accident, he can no longer assist his housemate with household chores, can no longer go to the gym four or five days a week like he used to, cannot ride his bike on a daily basis like he used to, cannot bowl, and generally cannot stand or do anything physical for any extended period.

Plaintiff visited numerous doctors after the August 2021 accident, but the notes from those visits generally reflect that plaintiff did not complain of pain to his neck, back, or shoulder, and when he did, the doctors believed that the pain was due to degenerative conditions. But that changed when plaintiff had an MRI on February 25, 2022. At that visit, plaintiff was diagnosed with a tear in his right shoulder and herniated discs in his back. Then, on June 10, 2022, plaintiff visited Farmbrook Interventional Pain with complaints of back pain and shoulder pain, saying that the pain started after the August 2021 accident. At this visit, Dr. Arvinder Dhillon noted a decreased range of motion in plaintiff's neck, right shoulder, and lower back. These same findings were made during a follow-up visit on July 13, 2022, and another follow-up visit four weeks later on August 12, 2022. Following each of these visits, Dr. Dhillon signed a form stating that he had examined plaintiff "for injuries sustained in the above accident," and that, "[a]s a result of the injuries in this accident," plaintiff was "disabled and/or restricted" from doing certain housework and recreational activities for one month. The records do not specify the accident to which they are referring.

Plaintiff eventually brought suit against the City, alleging that Mitchell was operating a vehicle owned by the City in a negligent manner, that Mitchell's negligent operation of the vehicle injured plaintiff, and that "the injuries sustained by Plaintiff surmount the tort threshold for recovery under MCL 500.3135." The City moved for summary disposition in relevant part under MCR 2.116(C)(10), arguing that there was no evidence that plaintiff had suffered an objectively manifested impairment as a result of the August 2021 accident. According to the City, the

available evidence established only that plaintiff could not do certain things because of subjective complaints of pain, which was insufficient to establish an objectively manifested impairment, and thus insufficient to establish a threshold injury under MCL 500.3135. In response, plaintiff argued that he had suffered an objective impairment because plaintiff had been diagnosed with disc herniations in his spine and a tear in his shoulder, which were physical manifestations confirming that plaintiff's complaints of pain were not merely subjective.

The trial court heard the City's motion for summary disposition on March 28, 2024. After hearing the parties' arguments, the court delivered a ruling from the bench. On the threshold-injury issue, the court observed that plaintiff had presented medical records stating that plaintiff had experienced a decreased range of motion in his back, as well as injuries to discs in his back. The court also noted that a doctor had disabled plaintiff from housework and lifting over 20 pounds. But the court believed that the medical records on which plaintiff relied "indicate the various complaints may be traumatic, but may not be." So the court concluded that "there is objective manifestation of impairments, just not that they are traumatic in origin." The court accordingly granted the City's motion for summary disposition because "[t]here is no evidence to support a finding that the claimed injuries were related to the motor vehicle accident." The trial court entered an order granting summary disposition in favor of the City on March 29, 2024.

This appeal eventually followed.[1]

## II. STANDARD OF REVIEW

The trial court's decision to grant or deny summary disposition is reviewed de novo. *Neal v Wilkes*, 470 Mich 661, 664; 685 NW2d 648 (2004). Defendant moved for summary disposition under MCR 2.116(C)(10). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). A (C)(10) motion is properly granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10). "A genuine issue of material fact exists when the record, drawing all reasonable inferences in favor of the nonmoving party, leaves open an issue on which reasonable minds could differ." *Campbell v Kovich*, 273 Mich App 227, 229; 731 NW2d 112 (2006). The party filing a (C)(10) motion can carry its burden by either (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996) (quotation marks and citation omitted). In response to a properly supported (C)(10) motion, the nonmoving party cannot "rest on mere allegations or denials in the pleadings,

---

[1] Plaintiff also brought claims against Mitchell and his insurer, Liberty Mutual Personal Insurance Company. When the trial court granted the City's motion for summary disposition, it also granted summary disposition in favor of Mitchell on grounds that Mitchell was entitled to governmental immunity because his conduct was not grossly negligent, and plaintiff does not contest that ruling in this appeal. After the trial court granted the City's motion for summary disposition, Liberty Mutual and plaintiff entered into a stipulated order to dismiss plaintiff's claim against his insurer. In that order, plaintiff reserved the right to appeal the trial court's dismissal of plaintiff's claim against the City.

but must, by documentary evidence, set forth specific facts showing that there is a genuine issue for trial." *Campbell*, 273 Mich App at 229.

## III. ANALYSIS

On appeal, plaintiff argues that the trial court erred by granting summary disposition in favor of the City because questions of fact exist as to whether he suffered a serious impairment of an important body function as a result of the August 2021 collision.

The no-fault act limits third-party tort liability to certain circumstances enumerated in MCL 500.3135. See *McCormick v Carrier*, 487 Mich 180, 189; 795 NW2d 517 (2010). That statute states in relevant part, "A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). Plaintiff here claims to have suffered a serious impairment of a body function as a result of the August 2021 motor-vehicle collision. MCL 500.3135(5) requires that a plaintiff claiming a serious impairment of a body function satisfy three requirements, stating:

(5) As used in this section, "serious impairment of body function" means an impairment that satisfies all of the following requirements:

(a) It is objectively manifested, meaning it is observable or perceivable from actual symptoms or conditions by someone other than the injured person.

(b) It is an impairment of an important body function, which is a body function of great value, significance, or consequence to the injured person.

(c) It affects the injured person's general ability to lead his or her normal life, meaning it has had an influence on some of the person's capacity to live in his or her normal manner of living. Although temporal considerations may be relevant, there is no temporal requirement for how long an impairment must last. This examination is inherently fact and circumstance specific to each injured person, must be conducted on a case-by-case basis, and requires comparison of the injured person's life before and after the incident.

Plaintiff claims that, as a result of the August 2021 accident, his ability to move his back, neck, and right shoulder has been impaired, and these impairments have affected his ability to live his normal life. There can be no serious dispute that the ability to move one's back and neck are important body functions, see *Netter v Bowman*, 272 Mich App 289, 306; 725 NW2d 353 (2006), overruled in part on other grounds by *McCormick*, 487 Mich 180; *Chumley v Chrysler Corp*, 156 Mich App 474, 481; 401 NW2d 879 (1986), and for an active person like plaintiff, the ability to move one's shoulder can also be an important body function, see *Williams v Medukas*, 266 Mich App 505, 509; 702 NW2d 667 (2005).

The City takes no issue with plaintiff's contention that, if his ability to move his back, neck, and shoulder is impaired, then he has suffered an impairment of an important body function. The City instead takes issue with the other two elements, but its primary argument in the trial court was that plaintiff failed to make a prima-facie showing as to the second element—that he suffered an

*objectively manifested* impairment of an important body function. This is so, according to the City, because plaintiff did not present any objective evidence of an impairment; rather, he simply chooses not to do certain things because they are now painful. This argument fails to consider all of the evidence in the record, and when that evidence is viewed in the light most favorable to plaintiff, there is a question of fact whether plaintiff suffered an objectively manifested impairment.

Our Supreme Court in *McCormick* differentiated between an "injury" and an "impairment," explaining that an "injury is the actual damage or wound," while "an impairment generally relates to the effect of that damage." *McCormick*, 487 Mich at 197. MCL 500.3135(5) is concerned with objectively manifested impairments, not injuries. For an impairment to be objectively manifested, there must be evidence of "actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *McCormick*, 487 Mich at 196. Pain and suffering alone is not enough to establish an objectively manifested impairment because pain alone does not affect "the functioning of the body." *Id*. at 197-198. For a plaintiff experiencing pain to establish an objectively manifested impairment, he or she "must introduce evidence establishing that there is a physical basis for their subjective complaints of pain," and that physical basis must affect the functioning of the body. *Id*. at 197-198. This generally, but not always, requires medical testimony or documentation. *Id*. at 198.

Here, plaintiff presented evidence that he injured his back and shoulder—imaging showed that plaintiff had a tear in his shoulder and herniated discs in his back. Plaintiff also presented evidence about the effect that these injuries had on him—in June 2022, plaintiff complained about these injuries to Dr. Dhillon, who determined that plaintiff had a decreased range of motion in his neck, right shoulder, and lower back. These findings were confirmed at subsequent appointments in July and August 2022. After each of these visits, plaintiff's doctors determined that plaintiff could not do housework that "involve[s] bending, lifting, twisting, and prolonged standing," and advised that plaintiff "should not engage or attempt to engage in activities that involve lifting over 20 lbs, excessive bending, twisting, turning, or prolonged standing or sitting, etc."

Contrary to the City's arguments, this evidence goes beyond demonstrating a mere injury or subjective complaints of pain; the evidence shows that plaintiff's injuries limited his ability to move his neck, right shoulder, and back, and prevented him from doing certain activities. While plaintiff complained about the pain in his back, neck, and right shoulder, there was a physical basis for plaintiff's subjective complaints of pain (the tear in his shoulder and the herniated discs in his back), and those injuries affected plaintiff's ability to move his back, neck, and shoulder. Viewing this evidence in the light most favorable to plaintiff, a reasonable juror could find that plaintiff presented evidence of an objectively manifested impairment to his back, neck, and shoulder.

Turning to the City's contention that plaintiff failed to establish that his impairment affected his ability to lead his normal life, as our Supreme Court explained, "the common understanding of to 'affect the person's ability to lead his or her normal life' is to have an influence on some of the person's capacity to live in his or her normal manner of living." *McCormick*, 487 Mich at 202. This is a subjective, fact-specific inquiry that looks to how the injured person lived their life before the impairment and compares that to the person's life after the impairment. *Piccione as Next Friend of Piccione v Gillette*, 327 Mich App 16, 21; 932 NW2d 197 (2019).

Plaintiff testified that, before the accident, he would help with chores around the house, go to the gym four or five times per week, and regularly go biking and bowling. And he testified that, after suffering impairments as a result of the August 2021 accident, he is unable to do these things. Accepting this evidence as true for purposes of resolving the City's motion, it establishes that plaintiff's ability to lead his normal life was affected by his impairment.

The City lastly argues that the trial court was correct when it concluded that there was no evidence that plaintiff's injuries (which led to his impairment) were caused by the August 3, 2021 accident. But at plaintiff's three visits to Farmbrook Interventional Pain in June, July, and August 2022, plaintiff reported his spinal and shoulder injuries to the provider and said that his pain in these areas began after the August 2021 accident; a doctor examined plaintiff at each visit and concluded that plaintiff had a limited range of motion in these areas; and after each visit, the doctor signed a form stating that the doctor treated plaintiff "for injuries sustained in the above accident," and that, "[a]s a result of the injuries in this accident," the doctor disabled plaintiff from doing certain housework and recreational activities. While these documents do not specify to which "accident" they refer, when these forms are considered alongside the fact that plaintiff told the doctors that the shoulder, back, and neck pain he was seeing them about began after the August 3, 2021 accident, a reasonable juror viewing the Farmbrook Interventional Pain records in the light most favorable to plaintiff could infer that the documents are referring to the August 3, 2021 accident. So, viewing these documents in the light most favorable to plaintiff, they tend to establish that the injuries to plaintiff's back and shoulder were caused by the August 3, 2021 accident. The trial court therefore erred by granting summary disposition in favor of the City.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Matthew S. Ackerman
/s/ Michael J. Kelly
/s/ Colleen A. O'Brien