*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RORY SPENCE,

       Plaintiff-Appellant,

v

LOUIS SALAK,

       Defendant-Appellee.

UNPUBLISHED
June 27, 2024

No. 367513
Oakland Circuit Court
LC No. 2022-196862-NI

Before: GARRETT, P.J., and SERVITTO and REDFORD, JJ.

PER CURIAM.

In this third-party automobile-negligence action, plaintiff, Rory Spence, appeals as of right the trial court's order granting defendant, Louis Salak, summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact). On appeal, plaintiff argues that the trial court erroneously granted defendant summary disposition because he established a genuine issue of material fact regarding the existence of an objectively manifested impairment under the No-Fault Act, MCL 500.3101 *et seq.* Further, plaintiff argues that the trial court erroneously conflated causation and the tort threshold in its analysis. For the reasons set forth below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of alleged injuries sustained by plaintiff in a motor vehicle accident on November 27, 2021. At the time of the accident, plaintiff was a 24-year-old college graduate who worked for Rocket Mortgage. Plaintiff alleged that defendant rear-ended his vehicle when plaintiff slowed his vehicle to prepare for a left-hand turn. The impact forced plaintiff's vehicle to strike the rear end of another vehicle. The speed limit was 45 miles per hour. Plaintiff reported that defendant struck him at approximately 30 to 40 miles per hour. The impact caused disabling damage to plaintiff's vehicle and the airbags deployed. Defendant, who plaintiff suspected was drunk, left the scene of the accident and was later arrested at his home.

In the aftermath of the accident, police officers observed that plaintiff appeared normal and did not call an ambulance for him. Plaintiff did not seek medical attention that day. The next day, he sought medical attention at an urgent care, complaining of pain radiating from his neck through his fingertips, as well as pain in his right hip, right knee, and right ankle. A physician performed

-1-

a physical examination of plaintiff and collected x-rays of his neck, lower spine, hip, knee, and ankle. The physician found no abnormalities in the examination or x-rays. The physician diagnosed plaintiff with cervical and lumbar strain and prescribed ibuprofen and a muscle relaxant.

Over the next nine months, plaintiff sought treatment for pain from several medical providers. On December 2, 2021, plaintiff went to his dentist, complaining of pain and clicking in his left jaw. His dentist observed normal occlusion, no clicking in the jaw, no palpation tenderness, and normal range of motion. The dentist prescribed plaintiff a nighttime splint for signs of teeth grinding. On December 16, 2021, plaintiff went to his chiropractor, who diagnosed him with whiplash and tightness in his neck and back. On January 7, 2022, plaintiff underwent a nerve study for complaints of numbness and tingling in his hands and fingers. The physician found no evidence of nerve damage.

On January 12, 2022, plaintiff started physical therapy with a licensed physical therapist. At the initial meeting, plaintiff complained of pain in his jaw, neck, and lower back following the car accident. He also reported weak grip strength in his right hand. Plaintiff's physical therapist listed comorbidities of back pain, headaches, previous accidents, and pain in the right ankle and knee. After a physical examination, the physical therapist observed decreased grip strength in plaintiff's right hand with the notation "R hand = 80, 85, 85" compared to "L hand = 105, 95, 105." The physical therapist also observed limited range of motion in plaintiff's cervical spine, an altered gait, and asymmetry in his pelvis. After the initial appointment, plaintiff attended physical therapy three days a week through July 2022. During that time, plaintiff's physical therapist reported that plaintiff's grip strength returned to normal in February 2022 and his cervical range of motion increased such that he could engage in daily activities in March 2022. By May 2022, plaintiff could do yoga, lift weights, and sit comfortably at work for four hours at a time.

In May 2022, plaintiff had an appointment with a pain specialist for complaints of pain in his back, ankle, and hip. At an initial consultation, the pain specialist noted that plaintiff had normal cervical spine range of motion and a normal gait, but diagnosed him with muscle pain, or "chronic myalgias of the cervical, thoracic, and lumbar paraspinals post motor vehicle accident" and "chronic right ankle pain after an accident." The pain specialist prescribed prednisone to reduce any inflammation and ordered MRIs of plaintiff's neck and spine. The pain specialist noted in the record that it was "puzzling to me that he hasn't gotten better from the accident because it seems to be mostly myofascial problems which in somebody his age should respond favorably to therapy and resolve by now but it has not."

On May 31, 2022, six months after the accident, plaintiff underwent an MRI of his neck and back. The MRI impression of his neck showed:

> Degenerative changes of the cervical spine including disc bulges at C3-C7 without significant spinal canal stenosis.
>
> Mild left neural foraminal narrowing at C4-C5. Moderate left neural foraminal narrowing at C6-C7.
>
> Disc desiccation at levels C5-C6 and C6-C7.

The MRI of his back showed:

Degenerative changes of the lumbar spine including disc bulges at L3-S1. Mild spinal canal stenosis at L3-L4 secondary to disc bulge and superimposed central disc protrusion.

Mild bilateral neural foraminal narrowing at L3-L4, L4-5 [sic], and L5-S1.

Disc desiccation at L3-L4.

Plaintiff's pain specialist reviewed the MRIs and added "C6-7 left moderate foraminal stenosis with facet arthritis," "[u]ncovertebral joint arthropathy at C4-5 causing mild left foraminal stenosis," "L3-4 disc protrusion with mild central canal stenosis," "L3-4 through L5-S1 bilateral mild foraminal stenosis at L4-5 facet arthropathy" to his assessment of plaintiff. The pain specialist again noted that he was unsure what caused plaintiff's pain, but ordered epidural injections for the ongoing back pain and ordered plaintiff to take Tylenol as needed.

On May 25 and June 29, 2022, plaintiff consulted a licensed massage therapist, who massaged his neck, back, and shoulders. The massage therapist noted tightness in plaintiff's back, neck, shoulders, and hips. On August 1, 2022, plaintiff went to his chiropractor. The chiropractor noted plaintiff's complaint of soreness all over his body after a weekend of golf. Finally, on December 20, 2022, plaintiff's chiropractor noted his complaint of soreness all over plaintiff's body and limited range of motion in his neck and upper back after he sat for a three-hour LSAT practice examination.

Plaintiff filed this action in October 2022. Plaintiff provided his medical notations from appointments in support of his complaint, but did not provide depositions or affidavits from any of the medical professionals who drafted the notations. Plaintiff also drafted an affidavit describing how the pain continued to affect his ability to work, sleep, and workout.

One month after the close of discovery, defendant moved for summary disposition under MCR 2.116(C)(10) on the basis that plaintiff did not establish a genuine issue of fact regarding the tort threshold. Specifically, defendant argued that plaintiff presented no evidence of an objectively manifested impairment and no change in his ability to lead his normal life. Plaintiff opposed the motion by pointing to the notations made by the medical professionals who treated plaintiff after the accident. He asserted that his doctors observed objective manifestations of his reported pain. In a reply, defendant further asserted that plaintiff did not establish a genuine issue of fact that the accident caused an objectively manifested impairment.

The trial court dispensed with oral argument and issued an order and opinion granting defendant summary disposition under MCR 2.116(C)(10). The trial court provided the following explanation:

Viewing the evidence in the light most favorable to the non-moving party, the Court finds that there is no genuine issue of material fact. Under the first *McCormick* prong, a plaintiff must show that injuries resulting from a vehicle accident were "evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *McCormick*, 487 Mich at 196. Plaintiff failed to demonstrate the Accident caused his alleged injuries. Specifically, the Court finds the objective tests – x-rays and MRIs – do

not show any fractures or traumatic injuries and only demonstrate degenerative changes to the cervical and lumbar spine. There is no doctor's note or medical record opining the Accident caused Plaintiff's alleged impairment.

Plaintiff did not file a motion for reconsideration. This appeal follows.[1]

## II. STANDARD OF REVIEW

We review de novo a trial court's decision regarding a motion for summary disposition. *Jewett v Mesick Consol Sch Dist*, 332 Mich App 462, 470; 957 NW2d 377 (2020). Under MCR 2.116(C)(10), a party is entitled to summary disposition when the evidence does not present a genuine issue of material fact. *Id.* "A genuine issue of material fact exists when the record, viewed in the light most favorable to the nonmoving party, leaves open an issue upon which reasonable minds might differ." *MacDonald v Ottawa Co*, 335 Mich App 618, 622; 967 NW2d 919 (2021) (quotations marks and citation omitted). "The reviewing court should evaluate a motion for summary disposition under MCR 2.116(C)(10) by considering the substantively admissible evidence actually proffered in opposition to the motion." *Jewett*, 332 Mich App at 470 (quotation marks and citation omitted). This includes "affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties." *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). We do not make factual findings or weigh credibility. *Burkhardt v Bailey*, 260 Mich App 636, 647; 680 NW2d 453 (2004). We review questions of law de novo. *Burba v Burba (After Remand)*, 461 Mich 637, 647; 610 NW2d 873 (2000).

## III. THIRD-PARTY NEGLIGENCE PRINCIPLES

Under MCL 500.3135(1), "[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." Plaintiff did not allege that he suffered death or permanent serious disfigurement. Therefore, to overcome a motion for summary disposition, plaintiff must establish a question of fact that he suffered an impairment that meets the following criteria:

> (a) It is objectively manifested, meaning it is observable or perceivable from actual symptoms or conditions by someone other than the injured person.

> (b) It is an impairment of an important body function, which is a body function of great value, significance, or consequence to the injured person.

> (c) It affects the injured person's general ability to lead his or her normal life, meaning it has had an influence on some of the person's capacity to live in his or her normal manner of living. Although temporal considerations may be relevant, there is no temporal requirement for how long an impairment must last. This

---

[1] The Court acknowledges and thanks counsel for both parties for their postoral argument additional briefings, which have been received, reviewed and considered.

examination is inherently fact and circumstance specific to each injured person, must be conducted on a case-by-case basis, and requires comparison of the injured person's life before and after the incident. [MCL. 500.3135(5).]

This test was first established by the Supreme Court in *McCormick v Carrier*, 487 Mich 180, 215; 795 NW2d 517 (2010), and later codified by the Legislature.[2] As noted in the statute, the serious impairment analysis "is inherently fact- and circumstance-specific and must be conducted on a case-by-case basis." *McCormick*, 487 Mich at 215. The issue of whether a person suffered a serious impairment of body function is a question of law if there is no factual dispute concerning the nature and extent of the person's injuries. MCL 500.3135(2).

## IV. OBJECTIVELY MANIFESTED IMPAIRMENT AND CAUSATION

On appeal, plaintiff argues that the trial court erred by granting defendant's motion for summary disposition because he presented a genuine issue of fact regarding the "objectively manifested" prong of the tort threshold. Further, plaintiff argues that the trial court improperly intermingled the separate issue of causation into its analysis of the tort threshold. We agree that plaintiff presented a genuine issue of fact regarding the objective manifestation of an impairment; however, we affirm because he failed to present a genuine issue of fact regarding causation.

Under the first prong of *McCormick*, an objectively manifested impairment is "evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function," or stated in other words, is "observable or perceivable from actual symptoms or conditions." *McCormick*, 487 Mich at 196. The "proper inquiry is whether the impairment is objectively manifested, not the injury or its symptoms." *Id*. at 197. Impairment is defined as the "state of being impaired," and being impaired is defined as "weakened, diminished, or damaged" or "functioning poorly or inadequately." *Id*. (quotation marks and citation omitted). Subjective complaints of pain and suffering are insufficient to show impairment without "introduc[ing] evidence establishing that there is a physical basis for their subjective complaints of pain and suffering." *Id*. at 198 (quotation marks and citation omitted). This showing generally, but not always, requires medical testimony. *Id*.

Plaintiff relied on various medical records from the year after the accident to support his assertion that the pain in his back and neck was supported by objective evidence. However, many of these records, particularly those from the several weeks after the accident, did not include observations of objectively manifested impairments. The day after the accident, plaintiff went to an urgent care complaining of pain in his neck, back, hip, and ankle. A physical examination and x-rays captured the day after the accident did not reflect any impairments. On December 2, 2021, plaintiff complained of pain and clicking in his left jaw after the car accident to his dentist, who observed no abnormalities, but prescribed plaintiff a bite splint because of signs of teeth grinding. From December 2021 to June 2023, plaintiff sought chiropractic care for complaints of stiffness, soreness, and impaired motion in his neck and shoulder. Although the chiropractor records list his subjective complaints, the record contains no diagnosis or observation regarding these subjective complaints. In January 2022, plaintiff underwent a nerve study for complaints of numbness and

---

[2] MCL 500.3135(5), as amended by 2019 PA 21 and 2019 PA 22, effective June 11, 2019.

tingling in his hands and fingers. The nerve study indicated no evidence of nerve damage in his upper extremities to support his subjective complaints of pain. None of these medical records presented objectively manifested evidence of plaintiff's complaints of pain.

The records from plaintiff's physical therapist, pain specialist, and licensed massage therapist provided objective evidence of plaintiff's back and neck pain. From January 2022 to July 2022, plaintiff underwent physical therapy for complaints of neck, low back, and jaw pain, as well as tingling in his fingers. The physical therapist observed that plaintiff displayed "right out toeing" and "left in toeing," pelvic asymmetry, decreased grip strength in his right hand compared to his left hand, and limited cervical range of motion. These findings were consistent with plaintiff's subjective complaints of pain in his neck and back. See *id*. at 218 (holding that the plaintiff satisfied the first prong by presenting evidence of reduced range of motion after the plaintiff suffered a broken ankle).

Defendant argues that the physical therapy records do not reflect an objectively manifested impairment because they show that plaintiff's pain reduced, his cervical range of motion returned to normal limits, and he returned to lifting weights and yoga after participating in physical therapy sessions. Although these records reflect improvements in plaintiff's condition, this argument goes to the length of time that the impairment affected his daily life, not its existence. "[T]he statute does not create an express temporal requirement as to how long an impairment must last in order to have an effect on the person's general ability to live his or her normal life." *Id*. at 203 (quotation marks omitted). Accordingly, defendant misconstrues the fact that impairments were not permanent with the idea that the impairments did not exist in the first place.

After physical therapy did not resolve plaintiff's complaints, he went to a pain specialist in May 2022 for complaints of back, right ankle, and hip pain. MRIs of plaintiff's neck showed "[d]egenerative changes of the cervical spine including disc bulges at C3-C7 without significant spinal canal stenosis." The neck MRI also showed "mild left neural foraminal narrowing at C4-C5," and "moderate neural foraminal narrowing at C6-C7." The back MRIs showed "[d]egenerative changes of the lumbar spine including disc bulges at L3-S1. Mild spinal canal stenosis at L3-L4 secondary to disc bulge and superimposed central disc protrusion," and "mild bilateral neural foraminal narrowing at L3-L4, L4-5, and L5-S1." After the MRIs, the pain specialist diagnosed plaintiff with "C6-7 left moderate foraminal stenosis with some arthritis," "some uncovertebral joint arthropathy at C4-5 causing mild left foraminal stenosis," "L3-4 disc protrusion with mild central canal stenosis," and "L3-4 through L5-S1 bilateral mild foraminal stenosis at L4-5 facet arthropathy." These records present objectively manifestations of impairments consistent with plaintiff's subjective complaints of back pain. The fact that the record also indicates some degenerative changes does not eliminate a question of fact regarding the other impairments indicated in the MRIs.

Finally, plaintiff saw a licensed massage therapist with complaints of tightness in his back, neck, and shoulders on May 25, 2022, who noted tightness in plaintiff's back, neck, and shoulders. Palpation of tissue revealing tightness is sufficient objective evidence of the subjective complaint of tightness. See *Chumley v Chrysler Corp*, 156 Mich App 474, 481-482; 401 NW2d 879 (1986)

(explaining that palpation of tissue confirming muscle spasms was sufficient objective evidence of muscle spasms).[3]

Plaintiff established a genuine issue of material fact that he suffered an objectively manifested impairment with the medical records of his physical therapist, pain specialist, and licensed massage therapist. Accordingly, the trial court erred when it held that there was not a genuine issue of fact regarding the objective manifestation prong of the tort threshold. However, intermingled in its tort threshold analysis, the trial court also addressed causation.

Causation is an issue distinct from the tort threshold analysis "typically reserved for the trier of fact unless there is no dispute of material fact." *Patrick v Turkelson*, 322 Mich App 595, 616; 913 NW2d 369 (2018). Although intermingled with the trial court's objective manifestation analysis, causation was an issue fairly before the trial court during the summary disposition proceedings. Defendant raised the issue of causation in his reply brief. Plaintiff did not respond in writing to the reply brief although he could have sought leave to reply. See MCR 2.116(G)(1)(*iv*) ("[N]o additional or supplemental briefs may be filed without leave of the court."). Likewise, after the trial court granted summary disposition on both the tort threshold and causation grounds, plaintiff did not file a motion for reconsideration asserting that the trial court improperly considered causation when it granted the motion. See MCR 2.119(F). Accordingly, we address whether the trial court properly granted summary disposition on causation grounds.

To establish cause in fact, a party must "present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Patrick*, 322 Mich App at 617 (quotation marks and citation omitted). A party cannot establish causation by mere speculation; however, a party has presented sufficient evidence of causation "if it establishes a logical sequence of cause and effect, notwithstanding the existence of other plausible theories, although other plausible theories may also have evidentiary support." *Id*. (quotation marks and citation omitted). A temporal relationship is insufficient to establish the requisite causal nexus. *Lowery v Enbridge Energy Ltd Partnership*, 500 Mich 1034; 898 NW2d 906 (2017). "[L]itigants do not have any right to submit an evidentiary record to the jury that would allow the jury to do nothing more than guess." *Skinner v Square D Co*, 445 Mich 153, 174; 516 NW2d 475 (1994).

After reviewing the record, we conclude that plaintiff did not establish a genuine issue of material fact whether he suffered an objectively manifested impairment caused by defendant. Each of the medical records that support the existence of an objectively manifested impairment did not describe a physical cause of plaintiff's pain directly attributable to the car accident. The physical therapy records observing the reduced range of cervical motion, reduced grip strength, and altered gait say nothing about the cause of these impairments. The MRIs of plaintiff's back and neck from the pain specialist do not connect plaintiff's pain to a source. Instead, that record expressly

---

[3] Court of Appeals cases decided before November 1, 1990, are not binding. MCR 7.215(J)(1). Although this Court is not "strictly required to follow uncontradicted opinions from this Court decided before November 1, 1990," those opinions are "nevertheless considered to be precedent and entitled to significantly greater deference than are unpublished cases." *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018).

questions the possibility that the car accident was the source of the pain with the statement that it was puzzling to the doctor that plaintiff had not gotten better. Finally, the massage therapist record only notes that plaintiff experienced soreness without providing any theory of why plaintiff was sore.

Offering medical notation of plaintiff's impairment after the accident alone is insufficient to establish a causal link. See *Lowery*, 500 Mich 1034. Outside of noting that plaintiff experienced pain, none of these medical records provided evidence tying plaintiff's impairments to the car accident. Plaintiff presented no other evidence, such as the depositions or affidavits of these medical professionals, to support his theory of causation. In light of the lack of medical records connecting the impairments to the accident, as well as plaintiff's history of back pain, and the delay in time between the car accident and diagnoses, no reasonable juror could conclude that plaintiff established a sequence of cause and effect showing that his back and neck pain was a result of the car accident. See *MacDonald*, 335 Mich App at 622. Therefore, summary disposition was properly granted. The trial court declined to address the remaining *McCormick* prongs. In light of our causation holding, we likewise decline to address the remaining *McCormick* prongs.

## V. BURDEN OF PRODUCTION

Plaintiff alternatively argued that defendant failed to meet his initial burden of production in support of his motion for summary disposition. We disagree.

When the moving party presents a motion for summary disposition under MCR 2.116(C)(10), that party has the initial burden, which the moving party may satisfy by either "(1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim or (2) demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Bronson Health Care Group, Inc v Esurance Prop and Cas Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 363486); slip op at 4 (quotation marks and citation omitted). The nonmoving party cannot "rest on mere allegations or denials in the pleadings, but must, by documentary evidence, set forth specific facts showing that there is a genuine issue for trial." *Id*. (quotation marks and citation omitted). As the moving party, defendant bore the initial burden of production. In this case, defendant relied on his assertion that plaintiff presented insufficient evidence to establish a genuine issue of material fact with the evidence produced during discovery. He was entitled to rely on this assertion to meet his burden of production. See *id*.

Affirmed.

/s/ Deborah A. Servitto
/s/ James Robert Redford

-8-